## Case No. 6,144.

### HARRISON v. STERRY et al.

[Bee, 244.] [1]

District Court, D. South Carolina. Nov. 13, 1807.

BANKRUPTCY—PRIORITY OF LIEN OF UNITED STATES —FOREIGN COMMISSION OF BANK- RUPTCY—ATTACHMENT.

1. If the persons or property of debtors of the United States are within the jurisdiction of our courts, the United States have a priority to all other claimants.

[See note at end of case.]

2. The attachment act of this state is not affected by a commission of bankruptcy in England. No difference here between foreign and native creditors, under that act.

[Cited in Blake v. Williams, 6 Pick. 288.]

[See note at end of case.]

3. An agent of the United States in England cannot, by conforming to the bankrupt laws there, lessen the priority established in favour of the United States here.

[See note at end of case.]

Bird, Savage and Bird, merchants of London, had been agents for the United States from the month of June, 1802, about which time they had received remittances on account of the United States, amounting to 127,171 dollars; with other sums that have been since put into their hands: and this long before the existence of any other lien produced in this cause. In November, 1799, a house consisting of the same parties was established at New-York, under the firm of Robert Bird and Co. On the 10th December, 1801, Henry Mertins Bird, and Benjamin Savage, the London partners, executed a power of attorney to Robert Bird, the partner, residing at New-York, in the usual form, appointing him their attorney for their joint and separate concerns, or as partners with Robert Bird, under the firm of Bird, Savage and Bird, of London, or Robert Bird and Co. of New-York. In this deed, none but the usual powers are given to Robert Bird. On the 3d December, 1802, a deed under seal was executed by Robert Bird in the names of Bird, Savage and Bird, which he signed and sealed for himself, and for each of them, as their attorney. On the 31st January, 1803, he signed another paper of the like tenor and import, but without a seal, in the name of Bird, Savage and Bird, and Robert Bird and Co. By these he assigned to the complainant Harrison, his executors, administrators and assigns, upon the trusts therein mentioned, all their shares in certain goods and merchandize on board the ship Semiramis, bound to the East Indies, and the profits thereof; and also the debts of Legaré, Theus, and Prioleau, and two other mercantile houses

[1] [Reported by Hon. Thomas Bee, District Judge.]

in Charleston. It does not appear that these papers were recorded, or notice of the assignment given to the debtors. Six days after the date of this assignment, the house of Bird, Savage and Bird, in London, stopped payment; and on the 27th March following the house of Robert Bird and Co. at New-York, did the same. On the 2d April, 1803, the first attachment against the property of Bird, Savage and Bird, was lodged in this city. Divers others were lodged on the 15th, 16th and 23d. The bankruptcy of the firm in London was declared in England 12th June, 1803. That of the house in New-York was declared on the 5th December following.

BEE, District Judge. This bill is filed by Harrison the assignee, under the sealed deed of December, 1802, and the unsealed instrument of 31st January, 1803. He prays that this court will aid him in recovering the assigned property, and direct him in the application of it. Answers and claims have been filed by many creditors of the bankrupts; by the assignees in England, and those under the commission in New-York. These compose, altogether, six classes of claimants. 1st. Harrison, as private assignee for particular creditors of Robert Bird and Co. 2d. The United States. 3d. The attaching creditors residing in the United States. 4th. Attaching creditors who reside abroad. 5th. Assignees under the commission at New-York. 6th. Assignees under the British commission.

In determining on these different and clashing interests, I feel much satisfaction in the assurances of all the parties, that the final decision will be made by the supreme court of the United States.[2] This consideration induces me to proceed in the cause with less reluctance than I should otherwise do; and in the discussion I shall first speak of the claim of the United States as entitled to priority over the rest. Fortunately, I can be at no loss upon this point; for the case of U. S. v. Fisher and Blight [2 Cranch (6 U. S.) 358], in the supreme court, has, in my opinion, settled it. They determine that the United States had a priority, in all cases whatsoever, and I should feel myself bound by this as the law, even if I entertained a different private opinion. But I readily concur; for the pleadings and evidence shew that Bird. Savage and Bird, had received large sums of money as public agents of our government, before any other lien on their property existed. This gave a clear equitable priority not only under the spirit, but also under the letter of the act of congress. It is objected that these bankrupts resided abroad; but this is not entitled to weight, for they could not, otherwise, have exercised their agency. Their persons, indeed, were not amenable to process from our courts, but their property in the United States was certainly liable. They were to all intents and purposes, receivers of public money, and are fully within the case of Blight and Fisher above mentioned. Nor do I think, as was contended, that any other agent of the United States could destroy their priority of claim by proving their debt under the commission of bankruptcy in England, voting for assignees, or laying an attachment against the property of the bankrupts. The decision in Blight and Fisher made every step of this sort unnecessary; but does not convert such endeavours to support a right into arguments for its destruction.

As to Harrison's claim under the sealed deed, and unsealed paper, I think it cannot be supported to the extent contended for. Robert Bird had not, by the usage and custom of merchants, a power to execute a deed of this sort, and to sign and seal for his partners, without a more special authority. He could not have done so if he had been on the spot with the other partners; must less can he be allowed thus to charge them, at the distance of three thousand miles. Besides, between the date of these papers and the failure of Bird and Savage, there was only an interval of six days. If, therefore, it should be determined that this is the deed of Bird and Savage, it must be considered as executed in contemplation of bankruptcy, and, of course, bad. All that can pass under these instruments will be Robert Bird's share in the partnership stock comprehended in them.

The third class of claimants are the attaching creditors here. The attachment act of this state is founded on a broad basis, and no commission of bankruptcy in England, even before our separation from that country, was ever allowed to interfere with its operation. Nor can the commission, taken out at New-York, avail in the present case, because these attachments were laid before it was obtained. Two thirds, therefore, of the property mentioned in the deed and unsealed paper executed to Harrison, must be liable to the attaching creditors, according to priority in the lodging of their attachments. As to the British creditors who have attached, our act makes no distinction between them, and those of the class I have just considered; nor shall I attempt to make any. If any surplus should remain after satisfying the preceding claims, the assignees under the New-York commission will be entitled to receive it. Let all costs of suit be paid out of the funds of the bankrupts remaining in the hands of the district attorney, after satisfaction of the claim of the United States. And let the registrar, acting as master, lay before the court a statement of the several demands as they will be affected by this decree.

[NOTE. From this decree all the parties except the United States appealed. The opinion of the supreme court was delivered by Chief Justice Marshall (5 Cranch [9 U. S.] 289). He held that the words of the act of April 4, 1800 (2 Stat. 19), which entitled the United States to a preference, did not restrain that privilege to contracts made within the United States or

with American citizens. "The right of priority forms no part of the contract itself. It is extrinsic." Nor, according to the sixty-second section, is this priority waived by proving the debt before the commissioners of the bankrupt.

[The assignment made to Harrison was held to be of no validity against the claimants, because, being merely an assignment of a chose in action, it was a contract, rather than an actual transfer, and because it was made under circumstances which expose it to the charge of being a fraud upon the bankrupt laws. The attaching creditors have no lien, and can only claim a dividend of the balance with the other creditors. The interest of Robert Bird in the company (one-third) was held to go to his assignee. The remaining two-thirds were held liable to the attaching creditors according to the legal preference obtained by their attachments.]